DENMARK P. COLLINS et al. *v.* GEORGE F. DREW et al., Appellants, THE OCEANIC STEAM NAVIGATION COMPANY et al., Respondents.

Whatsoever is comprehended in the terms "wharves, piers, bulk-heads and bridges, and other structures connected therewith," as used in the act of 1872 in relation to mechanics' liens (chap. 669, Laws of 1872) is exclusively provided for by that law; and to perfect a lien, whether for labor or materials, its requirement in regard to the filing thereof must be followed.

The term "other structures connected therewith" includes all structures connected with a wharf, pier, etc., and necessary for its proper use.

Accordingly, *held*, that "sheds" erected upon piers in the city of New York, of a steam navigation company, for offices and other purposes of the company were included in that term, and that a lien for materials furnished for, and used in, the erection of such "sheds," not filed within thirty days from the time when the materials were delivered was invalid, although filed within the time prescribed by the general lien law of that city.

(Argued September 29, 1876 ; decided October 6, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas of the city and county of New York affirming a judgment entered upon the report of a referee.

This action was brought to foreclose a mechanic's lien.

The facts appear sufficiently in the opinion.

*B. F. Watson* for the appellants.

*Tunis G. Bergen, Jr.*, and *Hugh Porter* for the respondents. The sheds erected on defendants' piers came under the provisions of chapter 669, Laws of 1872. (Laws 1875, chap. 249, § 1; Potter's Dwarris, 144, Rule 7.)

EARL, J. Prior to February, 1874, the Ocean Steam Navigation Company owned Piers Nos. 51 and 52, on the North River in the city of New York, and made a contract with defendant Wood to repair the piers and to erect certain structures thereon and connected therewith. Before February

tenth, Wood had completed his contract and there was due him, upwards of $5,000. Soon thereafter the plaintiff and some of the defendants filed liens against the piers under the lien laws applicable to the city of New York, and some of the defendants, as creditors of Wood, attached the debt due him from the Steam Navigation Company. The plaintiffs commenced this action to foreclose their lien and made all the persons defendants who claimed a lien upon or interest in the sum so due Wood, and the controversy upon the trial was as to the priority and regularity of liens. It appeared that defendants Drew and Bucki furnished material to Wood to complete his contract and that the last material was furnished more than thirty days, but less than three months, before they filed their notice of lien. The referee held that they acquired no lien because they filed their notice too late, and it is this decision which they complain of upon this appeal.

The material furnished by the appellants was used in erecting upon the piers what in the notice of liens and in Wood's contract are called sheds, and they were to be used for the offices and other purposes of the company. Wood's contract was for erecting sheds upon the piers and widening, lengthening and repairing the piers.

By the mechanics lien law applicable to the city of New York (chapter 500, of the Laws of 1863), a person performing labor or furnishing material towards "the erection of, or in altering, improving or repairing of any building or buildings, or the appurtenances thereto in the city of New York," could acquire a lien upon "such house or building, and the appurtenances and lot on which the same shall stand" by a compliance with that law. Among other things, he was required to file a notice of lien within three months after the work was done or material furnished. The appellants claim that their case is governed by this law, and, hence, that their notice of lien was filed in time. These sheds upon the piers could doubtless be called buildings within the meaning of this law, and if there were no other statute, the contention of the appellants could not well be answered.

But, in 1872, by an act (chap. 669) of that year, it was provided that "all the provisions of the laws relating to mechanics' liens heretofore passed, shall apply to wharves, piers, bulk-heads and bridges, and material furnished therefor, and labor performed in constructing said wharves, piers, bulk-heads and bridges, and other structures connected therewith, and the time within which said liens may be filed, shall be thirty days " from the time when the last work shall have been performed, or the material delivered.

The former statute was not comprehensive enough to cover wharves, piers, bulk-heads, and bridges, and the main purpose of this statute was to extend the lien law to those structures with an alteration of the time in which the liens were to be filed. And as other structures are necessarily connected with wharves and piers to make them useful, this statute also extends to them. Whatever is comprehended in the terms " wharves, piers, bulk-heads and bridges, and other structures connected therewith," is provided for exclusively by this law, and the only real difficulty in this case is to determine what is meant by the words " other structures connected therewith ? " These words were intended to cover something not strictly included in the terms before used. A lien might be filed on account of a pier not only, but other *structures connected therewith.* What other structures ? All structures on or connected with the pier, and necessary for its proper use. These sheds were built upon the piers, and were quite essential to their use, and, in a broad sense, were really a part of them.

It is claimed by the appellants that the law of 1872 was not intended to extend the lien law to any thing provided for by the former law, and, hence, as these sheds could properly be called buildings, the lien as to them is to be governed exclusively by the prior law. This claim cannot be allowed. The main purpose of the law was undoubtedly to provide for liens upon wharves, piers, bulk-heads and bridges, but as other structures are necessarily connected with them, it was intended to cover the whole subject, so that if a builder took a contract

to build a pier with all its necessary sheds and fixtures he could have his entire remedy under the one law. If a structure connected with a pier happened also to be a building, the case would still be governed by the later law. This construction will be found most convenient in practice, and will obviate the difficulty which might often arise of determining whether a building was a mere structure, or whether a structure was a building, within the meaning of the prior act.

It is also claimed that the statute of 1872 applies only to the case of work performed upon such "other structures," and not to materials furnished for constructing them. To sustain this claim requires a too critical and narrow construction of the statute. It was clearly intended, although the language used is quite inapt, that the whole statute, in all its provisions should, as the prior statute does, apply alike to the case of labor and materials.

While it is plain that much can be said in favor of the construction of the statute of 1872, contended for by the appellants, and that the intention of the legislature, in the language used, is not entirely free from doubt, we should not, upon a mere question of at most doubtful construction, reverse the unanimous decision of a court in which the lien laws applicable to the city of New York are mainly administered, particularly when the construction put upon the statute by that court will, on the whole, subserve the beneficent ends of the statute as well at least as any other.

We are. therefore of opinion that the judgment below is right, and should be affirmed, with costs.

All concur.

Judgment affirmed.